# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DISTRICT

| | |
|---|---|
| KASANDRA L. PARKS, <br><br> Plaintiff, <br><br> v. <br><br> WELLSTAR HEALTH SYSTEM, INC. <br><br> Defendant. | CIVIL ACTION FILE NO. <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Kasandra L. Parks ("Plaintiff"), by and through undersigned counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint against Defendant WellStar Health System, LLC, ("Defendant" or "WellStar") , stating as follows:

## I. NATURE OF COMPLAINT

1. Plaintiff brings this action for damages, reasonable attorney's fees, court costs, and expenses based on Defendant's violation of her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII") and 42 U.S.C. Section § 1981 ("Section 1981").

## II. PARTIES

2. Plaintiff is a resident of the State of Georgia, a citizen of the United States of

America, and is subject to the jurisdiction of this Court.

3. Defendant is a corporation registered to conduct business in Georgia.

4. Defendant may be served by delivering a copy of the Complaint and Summons to its registered agent, Leo E. Reichert, 793 Sawyer Road, Marietta, Georgia 30062.

### III. JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts I and II of this Complaint, which arise out of Title VII.

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Counts III and IV of this Complaint, which arise out of Section 1981.

7. This Court has personal jurisdiction over the parties because a substantial portion of the employment practices described herein took place within the Atlanta Division of the Northern District of Georgia.

8. Plaintiff exhausted all administrative remedies in this matter. *Exhibit 1*.

9. This action has been timely commenced.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### IV. FACTUAL ALLEGATIONS

11. Plaintiff is African-American.

12. At all times relevant to this Complaint, Plaintiff was employed by

Defendant.

13. Plaintiff was employed by Defendant from July 2017, until her termination on November 18, 2020.

14. During all times relevant to her claims, Plaintiff was employed by Defendant as an Assistant Vice President of Hospital Billing.

15. During all times relevant to Plaintiff's claims, Plaintiff reported to Mr. Sean Turner, Vice President of Revenue Cycle.

16. Mr. Turner is Caucasian.

17. Throughout Plaintiff's employment with Defendant, Mr. Turner exhibited a pattern of racist behaviors and comments toward Plaintiff.

18. By way of example, Mr. Turner once commented that when an African-American employee was hired in upper management or leadership, Plaintiff "must have been the one to hire them because [Plaintiff] is Black."

19. Mr. Turner also paid Plaintiff less than her similarly-situated Caucasian peers, despite the fact that Plaintiff was significantly more qualified.

20. In early 2020, it was revealed that Mr. Turner paid Ms. Carol Howard, Assistant Vice President, significantly more than Plaintiff.

21. Ms. Howard is Caucasian.

22. When Plaintiff discussed the discrepancy with Mr. Turner, he indicated that

he would rectify the issue yet ultimately failed to take remedial action as to the disparity.

23. After Ms. Howard quit her position due to her inability to successfully perform her job, Mr. Turner blamed Plaintiff.

24. Mr. Turner stated that Plaintiff should have assisted Ms. Howard with her duties, a request that was both outside of Plaintiff's job duties and above her pay scale.

25. On or about August 18, 2020, Executive Vice President and Chief Financial Officer Mr. Jim Budzinski held a virtual diversity meeting with WellStar leadership.

26. Mr. Budzinski is Caucasian.

27. Both Plaintiff and Mr. Turner were in attendance.

28. During the conference, Mr. Budzinski discussed George Floyd's death and racial tensions within the United States, and stated that he wished to know if anything was occurring within WellStar that "[he] didn't know about."

29. Plaintiff spoke out and indicated that she felt she was at a point where she could not take the racial disparate treatment any longer, speaking from her own experience.

30. Plaintiff stated that there was a continuation of pay inequality within

WellStar, and that as a Black person on her team she felt that she had to work harder than her counterparts since the playing field was not equal.

31. Plaintiff also discussed the comments regarding her race that had been made during her employment.

32. After Plaintiff disclosed her experience with race discrimination at WellStar, Mr. Budzinski asked Mr. Turner if he had any comments as to Plaintiff's disclosure.

33. While Mr. Turner started by stating that Plaintiff was the "hardest working person [he] knows," his dialogue took a turn when he felt it appropriate to discuss how he "does not have any Black friends."

34. Mr. Turner went on to say that he believed that what happened to George Floyd wasn't based on race and "could have happened to anyone."

35. Immediately following the virtual meeting, Mr. Turner texted Plaintiff and indicated that they needed to talk.

36. Mr. Turner later called Plaintiff and asked her to clarify what she meant in disclosing her race discrimination complaints.

37. After Plaintiff renewed her concerns, Mr. Turner stated that he disagreed with Plaintiff.

38. Mr. Turner stated that he wished Plaintiff could "be like [his] other Assistant

Vice Presidents."

39. As discussed above, those people Mr. Turner wished Plaintiff could be "like" are Caucasian.

40. Mr. Turner's comments and behaviors went unremedied by WellStar, despite the fact that the issues were well out in the open.

41. During Plaintiff's mid-year evaluation in or around September 2020, Mr. Turner made statements regarding Plaintiff "not working with her counterparts," again complaining that Plaintiff did not help Ms. Howard with her duties.

42. That referenced the same Ms. Howard that was paid more than Plaintiff and had long ago quit her position of her own volition based on her own inability to perform.

43. After the conversation between Mr. Turner and Plaintiff turned to a discussion of racial inequalities under Mr. Turner's leadership, Mr. Turner stated, "you and I, this just isn't working, you and I."

44. In October 2020, Plaintiff received an email from Human Resources to arrange a meeting regarding a then-undisclosed investigation

45. Upon meeting with Human Resources on October 19, 2020, Plaintiff was told that the Human Resources representatives were investigating an allegation to see if any compliance rules were violated.

46. The "request" referenced by Human Resources occurred when Plaintiff used her son's financial situation and WellStar account as an anecdote when discussing the company's failure to consistently apply charity discounts.

47. On August 26, 2020, Mr. Nathan Miller reached out to Plaintiff via text message inquiring about an account adjustment of a similar nature to her own.

48. Mr. Miller is Caucasian.

49. This was not the first such request by Mr. Miller, and at the time of other inquiries Mr. Miller reported to Mr. Turner.

50. Mr. Miller was not disciplined or investigated for inquiring into adjustments for his family members' accounts.

51. On October 22, 2020, Human Resources called Plaintiff and stated that she was being placed on administrative leave with pay pending the result of the investigation.

52. On November 18, 2020, Plaintiff was informed of her termination by Human Resources.

53. Human Resources stated that since they were "unfamiliar with the policies in play," they allowed Mr. Turner to complete the investigation himself.

54. Mr. Turner made the decision to terminate Plaintiff's employment.

55. Following her termination, Plaintiff was advised by Mr. Layne Sherman,

Executive Director of Revenue Management, that Mr. Turner came to him a week prior to Plaintiff's termination and asked that Mr. Sherman change or add verbiage into the policy at issue "immediately," to specifically mention "executives or leaders that have family complaints about their accounts."

56. That demand from Mr. Turner came only after he discovered Plaintiff made an inquiry into her family accounts, despite Mr. Miller taking much the same action only months prior and not inspiring any policy change.

57. Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on or about February 28, 2021.

58. Plaintiff received her Dismissal and Notice Rights from the EEOC, dated May 19, 2022.

## V. CLAIMS FOR RELIEF

## COUNT I: TITLE VII DISCRIMINATION

59. Plaintiff incorporates by reference paragraphs all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

60. Plaintiff is a member of a protected class by virtue of her race.

61. Defendant discriminated against Plaintiff in the terms and conditions of her employment based on race, specifically with regards to pay.

62. Defendant allowed Caucasian employees to make racist remarks in the

workplace.

63. The harassment of Plaintiff throughout her employment was severe or pervasive to create a discriminatorily abusive working environment.

64. Plaintiff suffered the adverse action of termination.

65. Defendant has no legitimate business reasons for the adverse actions against Plaintiff.

66. Defendant's business reason for Plaintiff's employment termination is pretextual.

67. Plaintiff suffered damages as a result of Defendant's discrimination, for which she is entitled to recovery.

## COUNT II: TITLE VII RETALIATION

68. Plaintiff incorporates by reference paragraphs all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

69. Plaintiff had a good faith belief that discrimination was occurring in the workplace.

70. Plaintiff made a protected disclosure alleging discrimination based upon her race when she complained about race discrimination and disparate pay between herself and the other members of the Defendant.

71. Defendant was aware of Plaintiff's protected disclosure because it was made

to Mr. Budzinski and Mr. Turner at the virtual diversity meeting with WellStar Leadership.

72. After the complaint was made, Plaintiff was terminated from her employment.

73. Defendant has no legitimate business reasons for the adverse actions against Plaintiff.

74. Defendant's business reason for Plaintiff's employment termination is pretextual.

75. Plaintiff suffered damages as a result of Defendant's actions, for which she is entitled to recovery.

## COUNT III: SECTION 1981 DISCRIMINATION

76. Plaintiff incorporates by reference paragraphs all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

77. Plaintiff is a member of a protected class by virtue of her race.

78. Defendant discriminated against Plaintiff in the terms and conditions of her employment based on race, specifically with regards to pay.

79. Defendant allowed Caucasian employees to make racist remarks in the workplace.

80. The harassment of Plaintiff throughout her employment was severe or

pervasive to create a discriminatorily abusive working environment.

81. Plaintiff suffered the adverse action of termination.

82. Defendant has no legitimate business reasons for the adverse actions against Plaintiff.

83. Defendant's business reason for Plaintiff's employment termination is pretextual.

84. Plaintiff suffered damages as a result of Defendant's discrimination, for which she is entitled to recovery.

## COUNT IV: SECTION 1981 RETALIATION

85. Plaintiff incorporates by reference paragraphs all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

86. Plaintiff had a good faith belief that discrimination was occurring in the workplace.

87. Plaintiff made a protected disclosure alleging discrimination based upon her race when she complained about race discrimination and disparate pay between herself and the other members of the Defendant.

88. Defendant was aware of Plaintiff's protected disclosure because it was made to Mr. Budzinski and Mr. Turner at the virtual diversity meeting with WellStar Leadership.

89. After the complaint was made, Plaintiff was terminated from her employment.

90. Defendant has no legitimate business reasons for the adverse actions against Plaintiff.

91. Defendant's business reason for Plaintiff's employment termination is pretextual.

92. Plaintiff suffered damages as a result of Defendant's actions, for which she is entitled to recovery.

## COUNT V: ATTORNEY FEES AND COSTS

93. Plaintiff incorporates by reference all paragraphs and allegations set forth in this Complaint as though fully and completely set forth herein.

94. As Defendant violated Plaintiff's rights protected by 42 U.S.C. §1981, Plaintiff is entitled to recover her attorney's fee and expenses as provided by 42 U.S.C §1988 and other relevant federal statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Declaratory relief;

b. Actual and compensatory damages in an amount to be determined by the enlightened conscience of a jury;

c. Punitive damages; and

d. Attorney's fees, costs of litigation and any other relief the Court deems just and proper.

Respectfully submitted this 15th day of August, 2022.

THE KIRBY G. SMITH LAW FIRM, LLC

/s/Amanda Brookhuis
Amanda M. Brookhuis
Georgia Bar No. 601396
Jarrell Bogan
Georgia Bar No. 584018
*Attorneys for Plaintiff*

13.

14.

4488 N. Shallowford Rd
Suite 105
Dunwoody, Georgia  30338
T: (678) 379-7945
F: (877) 352-6253
amb@kirbygsmith.com

14.

15.

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 15th day of August, 2022.

THE KIRBY G. SMITH LAW FIRM, LLC

/s/Amanda Brookhuis
Amanda M. Brookhuis
Georgia Bar No. 601396
*Attorney for Plaintiff*

15.